The opinion of the Court was delivered by
Mr. Justice Nott.
A married woman is not capable of binding herself by deed, unless authorized to do so by an act. of the Legislature; and then, only in the the manner, and to the extent, prescribed by such an act. It becomes necessary, therefore, to look into the act, undenwhieh it is contended the plaintiff has disposed of her right, to see how far it authorizes such disposition. The act of 1795 contains two distinct provisions on this subject: the first authorizes feme coverts to bar themselves of dower in the lands of which their, husbands were seized; it, directs the manner, and prescribes the form, in which the renunciation is to be made. It requires her to renounce “ all her interest and estate,” and also, “ all her right and claim of dower.”
*14 The second directs the method by which she may convey away the fee simple of any real estate to which she may be entitled as her inheritance. It requires her to join her husband in a release to the purport of one before prescribed by the act. It then requires her to make a renunciation of her right in the manner directed in the case of dowers 5 but it prescribes no form. It requires her to renounce, &c. all her estate, interest, and inheritance. In the first the words are, “ interest, estate, and right, and claim of dowerin the second, “ estate, interest, and inheritance.” It is now contended, that having-joined her husband in a release, and having also renounced all her “ interest and estate, and also all her right and claim of dower,” she has virtually complied with the aet, and divested herself of the fee simple in the land. But I am not aware of any case where the words, “ a.11 my interest and estate,” in a deed, carry a fee simple. But if such a case can be found, it would not decide this question. For the words here used are those required in a renunciation of dower. Whereas, in a release of the fee simple, the word, “ inheritance,” is expressly required. So that whatever meaning the words might otherwise have had, the act has given a meaning to them, which cannot be departed from. The act further declares, that a certificate of the magistrate, before whom the renunciation is taken, signed by the woman, shall accompany the re- *15 tease; and also, a further certificate, “ that she did declare, that the release Was positively and bona fide executed at least seven days before her examination, and such renunciation shall not be considered as being complete or legal, until the same shall be recorded, &c. None of these requisitions have been complied with. The release, therefore, to MiCaioley, so far as regards this plaintiff, is ineffectual and void.
It is, however, contended, that the method here adopted by the plaintiff for the disposition of the land in question, had prevailed for many years before the act of 1795; and also since, until it has become the common law of the land. And although the act has prescribed a new-mode, it has not done away the old one. But it does not appear, that such a custom has ever prevailed; and if it has, it is not entitled to the support of this court. It would be giving effect to a vulgar error, in direct opposition to the law of the land. It does appear by the acts of the Legislature, that a particular mode had been adopted, by which married women did convey lands to which they were entitled in fee simple before there was any act to authorize it. (P. L. 132, 382, 262, 292.) But it was thought necessary to confirm all such titles by an act of the Legislature afterwards. The same act did also direct, that the same mode should be observed in future. Other methods were afterwards prescribed, from time to time; some of which were *16 pursued until altered by the act of 1795, as before stated. But the conveyance in this case was neither according to the old form, nor the ■ new one.
But, second, It is contended that the action was barred by the statute of limitations. It is not denied that the husband is entitled to the rents and profits of the wife’s land, during coverture ; of course he is entitled to dispose of it during that period. The release of the husband, therefore, was good during his life; and as the wife’s fight of action did not accrue until his death, the act of limitations did not commence its op eration until that time. She brought her action within about four years afterwards, so that the act of limitations could be no bar to a recovery.
Third, It is contended, that the plaintiff has forfeited her right by long acquiescence, and permitting the defendant to go on to improve the land, without interposing her claim, or giving him any notice of it. There are instances where long acquiescence, or even any acquiescence under peculiar circumstances, will be construed into a bar of a plaintiff’s right. If a person knowingly witnesses a conveyance of his own property, or stands by and sees an innocent purchaser erect valuable buildings on his land, and immediately in his presence, being, at the same time, cognizant of his right, without giving him notice, these, and such like cases, might be a bar to his recovery. But the case before us is not of that *17 description. The defendant probably has the title deeds, by which he knew the plaintiff’s # rights as well, and perhaps better, than she did herself. It does not appear that he has any valuable improvements on the land; he has erected such ordinary buildings as were necessary for the convenient enjoyment of the property ; and such perhaps as were not worth more than the use and occupation of it. There is no evidence by which it can be inferred that the plaintiff has been lying back until the defendant should make valuable improvements, that she might reap the fruits of his labour. She had five years to bring her action; she has availed herself of the indulgence which the law allows, and there are no circumstances to make this case an exception to the general rule. I am of opinion, therefore, that a new trial ought to be granted.
Colcock, Cheves, Gantt, and Johnson, J. concurred.